UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| DAKOTA RURAL ACTION, *et al.*,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE, *et al.*,<br><br>　　　　Defendants. | Civil Action No. 18-2852 (CKK) |

**MEMORANDUM OPINION**
(April 4, 2023)

Since the Great Depression, the Farm Service Agency ("FSA"),[1] resident within the United States Department of Agriculture, has extended loans to family farmers. Like all agency actions, these loans are subject to the National Environmental Policy Act ("NEPA"). After notice-and-comment rulemaking, NEPA permits agencies to categorically exempt ("CatEx") certain agency actions from further environmental review upon finding that they do not individually or cumulatively have a significant effect on the human environment. On August 3, 2016, FSA promulgated a new rule doing just that for, among other things, loan actions to medium-sized "concentrated animal feeding operations" ("CAFOs"). Plaintiffs argue that this rule was arbitrary and/or capricious and should be vacated pending remand. Defendants agree that the rule is procedurally infirm, but argue that the agency error was so minor that the Court should remand the rule to the agency without vacating it. The Court concludes that Plaintiffs

---

[1] Defendants in this matter are the United States Department of Agriculture, Tom Vilsack in his official capacity as Secretary of Agriculture, FSA, and Zach Ducheneaux in his official capacity as FSA Administrator. Because FSA is the promulgating agency, the Court refers to all Defendants by "FSA."

have the better of the argument and, upon consideration of the pleadings,[2] the relevant legal authorities, and the entire record, **DENIES** Defendants' [31] Motion for Voluntary Remand and **GRANTS** Plaintiffs' [35] Cross-Motion for Summary Judgment.

## I. BACKGROUND

The central question before the Court is whether it must vacate the FSA's promulgation of a rule creating a new categorical exemption from environmental review for loan actions to medium CAFOs. The applicable statute, the National Environmental Policy Act, 42 U.S.C. § 4332(2)(C), requires all agencies to undertake a certain degree of environmental review before effecting an agency decision or policy. *Nat'l Trust for Historic Preservation in U.S. v. Dole*, 828 F.2d 776, 780 (D.C. Cir. 1987). In addition to requiring an agency to consider the environmental consequences of its actions, NEPA ensures that "'the agency will inform the public that it has indeed considered environmental concerns in its decisionmaking process.'" *Brady Campaign to Prevent Gun Violence v. Salazar*, 612 F. Supp. 2d 1, 13 (D.D.C. 2009) (CKK) (quoting *Balt. Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*, 462 U.S. 87, 97 (1983)).

The default for such analysis is an "environmental impact statement" ("EIS") which, by statute, requires a particularly searching review before an agency takes an action that will "significantly affect[] the quality of the human environment." *Found. on Econ. Trends v.*

---

[2] The Court's analysis has focused on the following documents:
- Defendant's Motion for Voluntary Remand, ECF No. 31 ("Defs.' Mot.");
- Plaintiffs' Opposition to Motion for Remand Without Vacatur and Cross-Motion for Summary Judgment, ECF No. 35 ("Pls.' Mot.");
- Defendants' Reply in Support of their Motion for Remand Without Vacatur and Opposition to Plaintiffs' Motion for Summary Judgment, ECF No. 36 ("Defs.' Repl.")
- Plaintiffs' Reply in Support of Motion for Summary Judgment, ECF No. 38 ("Pls.' Repl."); and
- the Administrative Record, ECF Nos. 39-45 ("AR").

The Court held oral argument in this matter on September 9, 2022.

*Heckler*, 756 F.2d 143, 146 (D.C. Cir. 1985).  More commonly, however, an agency prepares an "environmental assessment" ("EA") when environmental impact is not clearly established, in which it explains in more limited terms why an EIS is unnecessary and there will be no significant environmental impact.  *See id.*; *Dole*, 828 F.2d at 780.  Finally, an agency need not publish an EA if it determines that the decision falls within a category of actions that "do[es] not individually or cumulatively have a significant effect on the human environment."  *Brady*, 612 F. Supp. 2d at 14 (quoting 40 C.F.R. § 1508.1(d)).

Here, FSA concluded that it need not employ any environmental analysis before taking certain loan actions to benefit medium-sized CAFOs.  CAFOs are industrial operations that raise animals for harvest, including slaughter.  *See* Gov't Accountability Office, *Concentrated Animal Feeding Operations: EPA Needs More Information and a Clearly Defined Strategy to Protect Air and Water Quality from Pollutants of Concern* (Sept. 2008) *available at* https://www.gao.gov/assets/a280238.html#:~:text=This%20is%20the%20accessible%20text%20file%20for%20GAO,Concern%27%20which%20was%20released%20on%20September%2024%2C%202008 (last accessed April 4, 2023 9:03 AM).  These businesses, some of which are family-owned, "raise[] animals in a confined situation for a total of 45 days or more during a 12-month period and [] bring[] feed to the animals rather than having the animals graze or seek feed in pastures and fields or on rangeland."  *Id.*  The byproducts of these operations may have environmental consequences.  *Id.*  Among other things, FSA provides certain loan services to CAFOs.  *See* AR001610.  At issue here are loans to "medium" CAFOs, which "stable[] or confine[][:]"  (1) "200 to 699 mature dairy cows, whether milked or dry;" (2) "300 to 999 veal calves;" and (3) "300 to 99 cattle," and (4) "37,500 to 124,999 chickens;" among other categories of animals.  40 C.F.R. § 122.23(b)(6)(i).   Plaintiffs challenge a new rule

implementing a categorical exclusion from environmental review for these operations, 7 C.F.R. §§ 799.41(a)(9)-(10) ("Final Rule").

Previously, FSA was required to conduct, at the very least, some degree of environmental review before providing financial assistance for most medium CAFOs.  AR 000019.  FSA then proposed a new rule in which FSA would use an "environmental screening worksheet" ("ESW") to determine whether a particular loan action to a medium CAFO should require an EA.  AR 001515 (Sept. 3, 2014).  The proposed rule did not provide notice that FSA would forgo an ESW for loan actions to medium-sized CAFOs and instead categorically exempt those actions from NEPA review.

The record provides no indication the FSA began to consider this course of action until it received, sometime between September 2014 and August 2016, precisely one comment placed into the Federal Register, arguing in short shrift:  "As proposed the provisions for medium CAFOs would be an onerous impediment to obtaining financing for operations that will often include young or beginning farmers."  AR 001610.  FSA evidently inferred that the commenter viewed ESW review for the actions at issue here as overly onerous, so it replied that, under the proposed rule, "ESW review will be completed for small and medium CAFOs . . . ."  *Id.*; *see also* AR 001515 (proposed 7 C.F.R. § 799.41(9)-(10) (Sept. 3, 2014)).  In other words, FSA disagreed, and would continue onwards with ESW review.  Oddly, FSA repeated the same reply to a similar comment in the notice of the Final Rule, despite reversing course in the Final Rule.  *See* AR 001608, 001620 (Aug. 3, 2016).  Again, at this time, FSA provided essentially no notice that it would reverse course in the Final Rule.

Upon exhaustive review of the record, the Court has been unable to locate FSA's reasoning for this change or the sources of data upon which FSA relied.  In August 2013, it

4

appears that FSA discussed certain new categorical exemptions, although these proposed categorical exemptions predated the August 2016 exemption for loans to mediums CAFOs. *See* AR 000308. There, FSA stated in conclusory fashion that it relied on "its experience implementing similar actions, the experience of other agencies, and information provided by the public." AR 000313. The only category that has any discussion in the record is the "experience of other agencies" as to the "[p]artial or complete release of loan collateral." AR 000329. Of this category, FSA identified only certain practices by the National Park Service which categorically exclude NEPA review only when an applicant has already demonstrated that its application would not disturb, *inter alia*, "the kind and amount of recreational, historical or cultural resources of the area[,] or the integrity of the existing setting." AR 000330. The other agency practices identified utilized environmental worksheets and do not apply a categorical exemption. *See* AR 000329-30.

Additionally, although FSA received public comments in 2014 that argued there should be a CatEx for all loan actions to medium CAFOs, AR 001439, 1444, these comments are largely the same as the sole comment included in FSA's 2016 discussion, which repeated FSA's 2014 position. Again, because this review predates public comments in both 2014 and 2016, there is no indication in the record that FSA returned to this material when it decided to reverse course between 2014 and 2016. Moreover, the record does not indicate the extent of FSA's review of its own prior loan actions to medium CAFOs, and there is no indication that the review included loan actions to medium CAFOs.

## II. LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact

5

and the movant is entitled to judgment as a matter of law." However, "when a party seeks review of agency action under the APA [before a district court], the district judge sits as an appellate tribunal. The 'entire case' on review is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). Accordingly, "the standard set forth in Rule 56[ ] does not apply because of the limited role of a court in reviewing the administrative record . . . . Summary judgment is [ ] the mechanism for deciding whether as a matter of law the agency action is supported by the administrative record and is otherwise consistent with the APA standard of review." *Southeast Conference v. Vilsack*, 684 F. Supp. 2d 135, 142 (D.D.C. 2010).

The APA "sets forth the full extent of judicial authority to review executive agency action for procedural correctness." *FCC v. Fox Television Stations, Inc.,* 556 U.S. 502, 513 (2009). It requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "This is a 'narrow' standard of review as courts defer to the agency's expertise." *Ctr. for Food Safety v. Salazar*, 898 F. Supp. 2d 130, 138 (D.D.C. 2012) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983)). As the "focal point" in administrative review, the Court's inquiry is limited to the administrative record before it. *Camp v. Pitts*, 411 U.S. 138, 142 (1973). Absent special circumstances, the Court is not to consider evidence outside the record or arguments not raised before the agency. *See Am. Bottling Co. v. NLRB*, 992 F.3d 1129, 1139 (D.C. Cir. 2021).

### III.   DISCUSSION

The Final Rule here suffers from two fatal infirmities. First, FSA provided no notice that it would categorically exempt all loan actions to medium CAFOs from any NEPA review, and

provided the public no opportunity to comment on this change.  Second, the record provides essentially no reasoning for this change.  Given the severity of these procedural errors, FSA does not overcome the presumption of this jurisdiction that a procedurally infirm environmental rule must be vacated pending remand to the promulgating agency.

As described above, a federal agency may promulgate a regulation identifying "categories of actions that do not normally have a significant effect on the human environment, and therefore do not require preparation of an [EA] or [an] [EIS]." 40 C.F.R. § 1501.4(a).  Such a category is termed a "categorical exclusion" or a "CatEx."  To create a CatEx, an agency must first determine, through notice-and-comment rulemaking, that the excluded actions do not individually or cumulatively have a significant effect on the human environment.  *See Earthworks v. U.S. Dep't of the Interior*, 496 F. Supp. 3d 472, 493 (D.D.C. 2020); *Colo. Wild, Heartwood v. U.S. Forest Serv.*, 435 F.3d 1204, 1209-10 (10th Cir. 2006).  The agency must then publish the proposed CatEx in the Federal Register, provide an opportunity for public comment, and submit the CatEx for approval to the Council on Environmental Quality ("CEQ") (a federal agency that effects NEPA).  *Heartwood*, 435 F.3d at 1210.  Because both notice and comment are necessary to sustain a CatEx, simply consulting with CEQ, without more, is insufficient to pass APA review.  *Heartwood, Inc. v. U.S. Forest Serv.*, 73 F. Supp. 2d 962, 975 (S.D. Ill. 1999) (CatEx excluding environmental review of certain amount of timber harvests failed under APA review where agency failed to explain during notice-and-comment rulemaking why amount of harvest would not have a significant impact on the environment); *see also Pub. Emps. for Environ. Responsibility v. Nat'l Park Serv.*, 605 F. Supp. 3d 28, 59-60 (D.D.C. 2022).

Here, FSA concedes that it did not make a finding as to environmental impact. Defs.' Repl. at 8.  Although FSA concedes this error, it evidently concludes that its notice-and-comment

rulemaking was not otherwise deficient. FSA declaims that it relied on "substantial data," Repl. at 11, which "presumably" included loan actions to medium-sized CAFOs, Mot. at 12. Yet it can point to nothing in the record supporting such a proposition. On the Court's review of the record, there is very little data discussed to support any of the new categorical exemptions, much less the challenged CatEx. *See* AR 000313-33. In both 2014 and 2016, in response to public comments, FSA explained that it would not create a CatEx for loan actions to medium CAFOs. AR 001439 (2014); AR 001610 (2016). In 2016, FSA's answer is also the *last* time FSA's reasoning for the particular challenged CatEx is mentioned in the record.

As a result, the administrative record itself belies FSA's arguments in its briefing. More importantly, FSA's baseless arguments are post-hoc rationalizations which a reviewing court may not accept to determine the scope of procedural error. *See Humane Soc. of U.S. v. Johanns*, 520 F. Supp. 2d 8, 33 (D.D.C. 2007) (CKK). Although FSA may be correct that it undertook a searching and comprehensive review of the environmental effects of the challenged CatEx, a regulation may be sustained only on the administrative record before the Court, not an agency's mere say-so. *See Am. Bottling Co. v. NLRB*, 992 F.3d 1129, 1139 (D.C. Cir. 2021). As such, not only did FSA fail to provide notice-and-comment rulemaking, but it also evidently failed to undertake the reasoned analysis required by NEPA before creating a CatEx.

The severity of these errors require vacatur. "The ordinary practice is to vacate unlawful agency action, and district courts in this [C]ircuit routinely vacate agency actions taken in violation of NEPA." *Standing Rock Sioux Tribe v. U.S. Army Corps of Engs.*, 985 F.3d 1032, 1050 (D.C. Cir. 2021) (cleaned up). That said, "[a] court is not without discretion to leave agency action in place while the decision is remanded for [reexamination]." *Id.* at 1051. The decision whether to remand without vacatur depends on whether "'there is at least a serious

possibility that the agency will be able to substantiate its decision,' and [whether] 'vacating would be disruptive.'" *NAACP v. Trump*, 298 F. Supp. 3d 209, 244 (D.D.C. 2018) (JDB) (cleaned up) (quoting *Radio-TV News Directors Ass'n v. FCC*, 184 F.3d 872, 888 (D.C. Cir. 1999)).

This exception to the general rule is an exception for good reason. Although NEPA is often considered a "procedural" statute, its purpose is "not to generate paperwork or litigation, but to provide for informed decision making and foster excellent action." 40 C.F.R. § 1500.1(a). If an agency does not explain its actions, and does not afford the public an opportunity to weigh in, the purpose of environmental notice-and-comment rulemaking is severely undermined. *See Kleppe v. Sierra Club*, 427 U.S. 390, 317-18 (1976) (Marshall, J., concurring in part). Moreover, "'experience suggests that remand without vacatur sometimes invites agency indifference.'" *Friends of the Earth v. Haaland*, 583 F. Supp. 3d 113, 157 (D.D.C. 2022) (RC) (cleaned up) (quoting *In re Core Commc'ns, Inc.*, 531 F.3d 849, 862 (D.C. Cir. 2008) (Griffith, J., concurring)). This case provides an excellent example. Although FSA admitted error in September 2019, to date, it appears that FSA has taken no action to correct its error. More importantly, however, there is nothing in the record to confirm FSA's insistence that it will be able to substantiate the challenged CatEx on remand. Therefore, on the administrative record before the Court, vacatur is necessary under this Circuit's default rule.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' [31] Motion for Voluntary Remand is **DENIED** and Plaintiffs' [35] Cross-Motion for Summary Judgment is **GRANTED**. The Court **DECLARES** that Defendant Farm Service Agency's August 3, 2016 final rule implementing the National Environmental Policy Act, 81 Fed. Reg. 51,274 (Aug. 3, 2016) is, in part, arbitrary,

capricious, and not in accordance with law pursuant.  The CAFO provisions of the Final Rule are

**VACATED**.  An appropriate order accompanies this Memorandum Opinion.


Dated: April 4, 2023                                        /s/
                                                     COLLEEN KOLLAR-KOTELLY
                                                     United States District Judge